UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TONY B. JACKSON, *et al*.,          :
      *Plaintiffs*,          :
                :
    v.          :
                :   Case No. 3:18-cv-1884 (VAB)
JOHN DOE KITCHEN MANAGER,          :
      *Defendant*.          :

**INITIAL REVIEW ORDER AND ORDER OF DISMISSAL**

Tony B. Jackson ("Plaintiff"), is incarcerated at Carl Robinson Correctional Institution ("Carl Robinson"). Compl., ECF No. 1 (Nov. 16, 2018). He initiated this civil rights action by filing an application to proceed *in forma pauperis* and a civil rights Complaint naming himself as well as Lonnie Pridgen and Joshua J. Morelli, also incarcerated at Carl Robinson, as plaintiffs. *Id.*; Mot. for Leave to Proceed In Forma Pauperis, ECF No. 2 (Nov. 16, 2018). He names John Doe Kitchen Manager ("Kitchen Manager Doe" or "Defendant") as the sole defendant. *Id.*

Mr. Jackson alleges claims under 42 U.S.C. § 1983 of deliberate indifference to his health by Kitchen Manager Doe in October and November 2018.

For the reasons set forth below, the claims asserted by all plaintiffs are **DISMISSED** without prejudice.

Mr. Jackson may file an amended complaint by **September 11, 2020**, to the extent he can address the deficiencies identified in this ruling.

Failure to file an amended complaint by that date will result in this case's dismissal.

## I.     FACTUAL ALLEGATIONS

On October 12, 2018, at Carl Robinson, Mr. Jackson allegedly experienced stomach pain, constant diarrhea, and migraine headaches from ingesting spoiled milk provided to him by

Kitchen Manager Doe. Compl. at 6 ¶ 1. Days later, Mr. Jackson allegedly experienced the same symptoms. *Id.* ¶ 2. While Mr. Jackson was in the bathroom, he allegedly overheard Mr. Pridgen and Mr. Morelli state that they had also ingested spoiled milk. *Id.*

Mr. Jackson allegedly then sent a request to the medical department seeking treatment for his symptoms of stomach pain, constant diarrhea, and migraine headaches and indicating that he believed that his symptoms were due to having ingesting spoiled milk. *Id.* ¶ 3.

Mr. Jackson allegedly informed correctional officers that he had become sick after drinking spoiled milk that had been provided to him by Kitchen Manager Doe. *Id.* at 7 ¶ 4. The officers allegedly again directed Mr. Jackson to contact the medical department. *Id.*

At the end of October or in early November 2018, Mr. Jackson allegedly experienced "serious" diarrhea, vomiting, and numbness in his throat and tongue. *Id.* ¶ 5. He allegedly could not sing in the men's choir because of his symptoms. *Id.* He allegedly then filed a grievance complaining that Kitchen Manager Doe had served him spoiled milk on multiple occasions. *Id.* ¶ 6. Mr. Jackson also allegedly reported the situation to his mental health social worker. *Id.* ¶ 7.

On November 7, 2018, Mr. Jackson allegedly threw up everything that he ate for lunch. *Id.* ¶ 8.

Mr. Jackson has allegedly since "been sick off and on," and being sick has allegedly affected his mental health disorders. *Id.* ¶ 9. Milk is allegedly often the only beverage offered at meals provided to inmates at Carl Robinson. *Id.* ¶ 4.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is

frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless

3

distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

### A.  Mr. Pridgen's and Mr. Morelli's Claims

In civil actions filed by more than one plaintiff, district courts within the Second Circuit have routinely held that each plaintiff must either submit an application to proceed *in forma pauperis* or pay the filing fee. *See Moreland v. Jones*, No. 9:18-CV-0181 (BKS/DJS), 2018 WL 1726352, at *2 (N.D.N.Y. Apr. 6, 2018) ("the fact that there are multiple plaintiffs in an action does not reduce or otherwise negate the obligation imposed on each incarcerated plaintiff to pay the filing fee under 28 U.S.C. § 1915(b)(1)"); *McNair v. Ponte*, No. 16 CIV. 4646 (PGG), 2018 WL 1384522, at *2 (S.D.N.Y. Mar. 19, 2018) (noting that chief judge had issued an order "directing each plaintiff identified in complaint to pay the court filing fee or to file an *in forma pauperis* application and authorization form"); *Podius v. Fed. Bureau of Prisons,* No. 16-CV-6121 (RRM) (PK), 2017 WL 1040372, at *2 (E.D.N.Y. Mar. 16, 2017) ("Where multiple plaintiffs file a joint action, each incarcerated plaintiff is required to pay the full filing fee."); *Razzoli v. Exec. Office of U.S. Marshals*, No. 10-CV-4269, 2010 WL 5051083,

at *3 (E.D.N.Y. Dec. 2, 2010) (holding that where there are multiple prisoner plaintiffs, each must comply with the requirements for seeking *in forma pauperis* status); *Amaker v. Goord*, No. 09-CV-0396, 2009 WL 1586560, at *2 (W.D.N.Y. June 4, 2009) (holding that each plaintiff prisoner must file an *in forma pauperis* application and inmate authorization form (citing cases)); *Ruffino v. Lantz*, No. 3:08-cv-1521 (VLB), 2009 WL 700653, at *3 (D. Conn. Mar. 13, 2009) (noting that "[n]o named plaintiff is excused from tendering the filing fee if he possesses sufficient funds to do so. . . . Thus, any person seeking to file an action without prepayment of the filing fee must submit a motion to proceed *in forma pauperis* [under] 28 U.S.C. § 1915(a)(1).").

On November 16, 2018, the same day he filed this Complaint, Mr. Jackson filed a motion for leave to proceed *in forma pauperis*. Mot. for Leave to Proceed In Forma Pauperis, ECF No. 2 (Nov. 16, 2018). The Court granted his motion. Order, ECF No. 6 (Nov. 20, 2018).

Neither Mr. Pridgen nor Mr. Morelli, however, has filed an application to proceed *in forma pauperis*. Furthermore, neither Mr. Pridgen nor Mr. Morelli has signed the Complaint as required by Rule 11(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number.").

On November 20, 2018, the Court issued notices of insufficiency to both Mr. Pridgen and Mr. Morelli, directing each of them to file an application to proceed *in forma pauperis* and informing each that if he failed to comply with the Court's order, the Complaint would be dismissed as to any claims asserted by him. *See* Notice to Petitioner Lonnie Pridgen, ECF No. 8

5

(Nov. 20, 2018); Notice to Petitioner Joshua Morelli, ECF No. 7 (Nov. 20, 2018). Neither Mr. Pridgen nor Mr. Morelli has filed an application to proceed *in forma pauperis* in compliance with the Court's orders.

Additionally, neither Mr. Pridgen nor Mr. Morelli has notified the Court of his current address. Local Rule 83.1(c)(2) requires that "[a]ny self-represented party . . . provide an address where service can be made upon such party." D. Conn. L. Civ. R. 83.1(c)(2). When he initiated this action, Mr. Jackson listed the addresses of both Mr. Morelli and Mr. Pridgen as Carl Robinson. *See* Compl. at 2–3. But the State of Connecticut Department of Correction website reflects that Mr. Morelli is no longer confined in a facility within the Department of Correction, and Mr. Pridgen has been released to special parole and is located at Bridgeport Po-Fernandes. *See* Offender Information Search, CONN. DEP'T OF CORR., http://www.ctinmateinfo.state.ct.us/ (Enter CT DOC Inmate Number 286518 for Mr. Morelli and 189751 for Mr. Pridgen).

Mr. Morelli has neglected to inform the Court of his current mailing address since his release from prison, and Mr. Pridgen has neglected to inform the Court of his current mailing address since his release on special parole. Thus, both have failed to comply with Local Rule 83.1(c)(2).

Because neither Mr. Pridgen nor Mr. Morelli has signed the Complaint, neither has paid the filing fee or filed an application to proceed *in forma pauperis* in response to the Court's Notices of Insufficiency, and neither has kept the Clerk of Court apprised of an address where Court orders and rulings could be mailed to him as required by Local Rule 83.1(c)(2), the allegations asserted by Mr. Pridgen and Mr. Morelli in the Complaint are dismissed without prejudice. *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("The district court [ ] has the

power under Fed. R. Civ. P. 41(b) to dismiss a complaint for failure to comply with a court

order, treating the noncompliance as a failure to prosecute."); *Ketter v. United States*, No. 18-

CIV-8574 (MKV) (GWG), 2020 WL 3550708, at *2 (S.D.N.Y. July 1, 2020) ("A decision to

dismiss an action for failure to prosecute 'may be made *sua sponte*.'" (quoting *Spencer v. Doe*,

139 F.3d 107, 112 (2d Cir. 1998))); *Phair v. Suffolk Cty. Corr. Facility*, No. 19-CV-3302 (GRB)

(LB), 2020 WL 3489495, at *1 (E.D.N.Y. June 26, 2020) (dismissing, *sua sponte*, incarcerated

plaintiff's complaint where he failed to file the required Prisoner Litigation Authorization form

following the court's Notice of Deficiency, and he failed to update his address with the Court).

### B.  Mr. Jackson's Claims

Mr. Jackson alleges that Kitchen Manager Doe served him milk that was not safe to drink

on multiple occasions in October and November of 2018, and that he has suffered physical and

mental distress due to becoming sick from ingesting the spoiled milk. He sues Defendant in his

official and individual capacities for monetary damages. *See* Compl. at 9. The Court construes

his Complaint as alleging an Eighth Amendment claim of deliberate indifference to his health

under 42 U.S.C. § 1983 and a state law claim of infliction of emotional distress.

#### 1.  Relief Available Under § 1983

In suits for monetary relief, "neither a State nor its officials acting in their official

capacities are 'persons' under § 1983." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (quoting *Will v.

Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, a plaintiff may bring a claim for

monetary damages against state officers in their personal capacities under § 1983. *Id.*

("[O]fficers sued in their personal capacity come to court as individuals. A government official

in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'" (citing *Will*, 491 U.S. at 71)).

As a result, Mr. Jackson cannot bring claims for monetary damages against Defendant in his official capacity; but the Court will address Mr. Jackson's claims against Defendant in his individual capacity.

### 2.  Exhaustion of Available Remedies

Incarcerated plaintiffs are required to exhaust administrative remedies before filing a federal lawsuit related to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

All available administrative remedies must be exhausted regardless of whether the administrative procedures provide the relief that the plaintiff seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90–91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)," and "demands compliance with agency deadlines and other critical procedural rules" (emphasis in the original) (internal citations and quotation marks omitted)). Thus, a prisoner who

8

does not complete the exhaustion process until after a federal action has been filed does not satisfy the exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."). An incarcerated plaintiff's failure to exhaust administrative remedies is only excusable if such remedies are in fact unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1856, 1858–60 (2016) (the "mandatory language [of 42 U.S.C. § 1997e(a)] means a court may not excuse a failure to exhaust, even to take [special] circumstances into account;" but while "[a]n inmate . . . must exhaust available remedies, [he] need not exhaust unavailable ones," such as one which "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," one which is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (internal citations omitted)).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Thus, "'[u]nless it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective, . . . it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition.'" *Mojias v. Johnson*, 351 F.3d 606, 610–11 (2d Cir. 2003) (quoting *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999)) (finding that district court improperly dismissed a prisoner's complaint for failure to exhaust administrative remedies without providing plaintiff notice and opportunity to respond). A court may, however, dismiss a complaint for failure to state a claim where the

allegations on the face of the complaint establish that it is subject to dismissal, even on the basis of an affirmative defense. *See Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement") (citing *Jones*, 549 U.S. at 215).

Here, it is clear that Mr. Jackson failed to exhaust administrative remedies available to him before filing this action.

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6. *See* State of Conn. Dep't of Corr., Administrative Directive 9.6, Inmate Administrative Remedies (eff. Aug. 15, 2013), http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf ("Admin. Dir."). The type of remedy available to an individual incarcerated with the State of Connecticut Department of Corrections depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6). Thus, claims related to conditions of confinement, including the nutritional adequacy or the quality of food or beverage items offered to prisoners by kitchen staff, are subject to the Inmate Grievance Procedure.

Under the Inmate Grievance Procedures set forth in Administrative Directive 9.6(6), a prisoner must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. Admin. Dir. 9.6(6)(A). If

attempts to resolve the matter verbally are not effective, the individual must make a written attempt using a specific form and send that form to the appropriate staff member. *See id.* If the individual does not receive a response to the written request within fifteen business days or he is not satisfied with the response to his request, he may file a Level 1 grievance. Admin. Dir. 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. Admin. Dir. 9.6(6)(I).

The incarcerated individual may appeal the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. Admin. Dir. 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the individual's receipt of the decision on the Level 1 grievance. Admin. Dir. 9.6(K). The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the incarcerated person. Admin. Dir. 9.6(M).

Level 2 appeals of individuals confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. Admin. Dir. 9.6(6)(K). The District Administrator is required to respond to the Level 2 appeal within thirty business days after receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level 2 appeals to which there has been an untimely response by the District Administrator. Admin. Dir. 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the prisoner's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner must be filed within thirty-five days of the filing of the Level 2 appeal. Admin. Dir. 9.6(6)(M). A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee. Admin. Dir. 9.6(6)(L).

Mr. Jackson alleges that, in mid-October 2018, he informed correctional officers that the Kitchen Manager was giving inmates spoiled milk. Compl. at 7 ¶ 4. At some point between the end of October and November 7, 2018, Mr. Jackson alleges he filed a grievance regarding the spoiled milk issue, alleging that it was making him and other prisoners sick. *Id.* ¶ 6. Mr. Jackson alleges that he did not receive a response to his grievance prior to filing this action. *Id.* ¶ 7.

The Complaint in this action is dated November 8, 2018, and was received by the Court for filing on November 16, 2018. *Id.* at 1, 8. Given the time frames for informal resolution and formal resolution of claims under the Department of Correction's grievance procedures set forth in Administrative Directive 9.6 and the dates on which Mr. Jackson allegedly ingested spoiled milk and became ill, as well as the approximate date on which he filed a grievance, Mr. Jackson could not have fully exhausted his available administrative remedies with regard to the claim of unconstitutional conditions of confinement before filing this action.

Thus, on this record, the Eighth Amendment conditions of confinement claim will be dismissed for failure to fully exhaust available administrative remedies before filing this action.

### 3. Eighth Amendment—Failure to State a Claim

Even if Mr. Jackson had exhausted his available administrative remedies, the Court concludes that he has failed to state a claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, which includes punishments that "involve the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care" and are confined in "safe[]" living conditions. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted).

The Supreme Court and the Second Circuit have held that deliberate indifference by prison officials to a prisoner's serious medical or dental needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance*, 143 F.3d at 702. To state a Section 1983 claim for deliberate indifference to a serious medical or dental need, a plaintiff must meet a two-pronged test, requiring an analysis of the claim both objectively and subjectively.

Under the objective prong, the inmate's medical or dental need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical or dental condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects

an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).

Under the subjective prong, the action or inaction of a prison official, medical staff member, or dental provider must have constituted recklessness. *See Salahuddin*, 467 F.3d 263, 279–80 (2d Cir. 2006). The official must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *Id.* at 280. Mere negligent conduct does not constitute deliberate indifference. *See id.* ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (stating that medical malpractice alone does not amount to deliberate indifference).

Mr. Jackson alleges that he became ill on at least two occasions in October and at least one occasion in November 2018 from drinking spoiled milk served to him by John Doe Kitchen Manager. Compl. at 6 ¶¶ 1–2, 7 ¶¶ 5–6, 8–9. Regardless of whether these episodes of illness constitute "serious medical needs" under the objective prong of a deliberate indifference analysis, Mr. Jackson has failed to establish the subjective prong.

There are no allegations to suggest that Kitchen Manager Doe knew that the milk was spoiled or that he intended to cause harm to Mr. Jackson's health. In fact, Mr. Jackson describes the conduct of Kitchen Manager Doe as "careless[]." Compl. at 9 ¶ 11. Negligent conduct does not state a claim of deliberate indifference to a basic human need. *See Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (to meet the "subjective requirement [of an Eighth Amendment claim], deliberate indifference requires 'more than mere negligence'" (quoting *Farmer*, 511 U.S. at 835)).

14

Accordingly, Mr. Jackson has not stated a plausible claim that Kitchen Manager Doe was deliberately indifferent to his health, and the Eighth Amendment conditions of confinement claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1) ("the court shall . . . dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted").

## ORDERS

The Court enters the following orders:

The claims asserted by Mr. Pridgen and Mr. Morelli are **DISMISSED** without prejudice under Fed. R. Civ. P. 41(b), because neither Mr. Pridgen nor Mr. Morelli has signed the Complaint, neither has paid the filing fee or filed an application to proceed *in forma pauperis* in response to the Court's Notices of Insufficiency, and neither has kept the Clerk of Court apprised of an address where Court orders and rulings could be mailed to him as required by Local Rule 83.1(c)(2).

The claims asserted by Mr. Jackson against Defendant are **DISMISSED** for failure to fully exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) prior to filing the action, and for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

The Court declines to exercise supplemental jurisdiction over the state law claim of infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

Mr. Jackson may file an amended complaint by **September 11, 2020**, to the extent he can address the deficiencies identified in this ruling.

Failure to file an amended complaint by that date will result in this case's dismissal without further notice from the Court.

**SO ORDERED** at Bridgeport, Connecticut this 7th day of August, 2020.

_____/S/_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE